UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TORUS U.S. SERVICES, INC., TORUS SPECIALTY INSURANCE COMPANY and TORUS NATIONAL INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>HYBRID INSURANCE AGENCY, LLC d/b/a HYBRID INSURANCE GROUP and EARL O. O'GARRO, JR.,<br><br>Defendants. | Civ. No. 14-01630 (KM)<br><br>OPINION |

**MCNULTY, U.S.D.J.:**

This matter comes before the Court on the unopposed motion of the plaintiffs, Torus U.S. Services, Inc. ("Torus US"), Torus Specialty Insurance Company ("Torus Specialty"), and Torus National Insurance Company ("Torus National") for default judgment against the defendants, Hybrid Insurance Agency, LLC d/b/a Hybrid Insurance Group ("Hybrid") and Earl O. O'Garro, Jr., pursuant to FED. R. CIV. P. 55(b)(2). The complaint asserts three counts: negligence (Count I); breach of contract (Count II); and conversion (Count III). For the reasons set forth below, I will enter a default judgment against Hybrid only—not O'Garro—as to the claim of breach of contract (Count II). The motion is otherwise denied.

## I. BACKGROUND

Plaintiff Torus US is a servicing agent for insurance companies with its principal place of business and place of incorporation in New Jersey. (Dkt. No. 1 ¶¶ 5, 7) Plaintiff Torus Specialty, a U.S. excess and surplus line insurer

1

serviced by Torus US, is domiciled in Delaware and maintains its principal place of business in New Jersey. (Dkt. No. 1 ¶¶ 5, 8) Plaintiff Torus National, a U.S. admitted markets insurer serviced by Torus US, is domiciled in Delaware and has its principal place of business in New Jersey. (Dkt. No. 1 ¶¶ 5, 9) Defendant Hybrid, an insurance broker, is a Connecticut limited liability company ("LLC") with its principal place of business in Connecticut.[1] (Dkt. No. 1 ¶¶ 5, 10) Defendant O'Garro, the President and CEO of Hybrid, is a Connecticut resident. (Dkt. No. 1 ¶¶ 5, 11)

On or about January 18, 2012, Torus US, as servicing agent for Torus Specialty and Torus National, entered into a contract with Hybrid (the "Broker Agreement"). (Dkt. No. 1 ¶ 12) The agreement stated that it was "between Torus US ... and the Broker, identified below," Hybrid. (Dkt. No. 1-3 p. 1) O'Garro signed on behalf of Hybrid. (Dkt. No. 1-3 p. 8) Under the agreement, Hybrid was permitted to submit accounts or risks to Torus US for the purpose of placing and procuring insurance coverage with either Torus Specialty or Torus National. (Dkt. No. 1 ¶ 13) The agreement required that Hybrid "hold all premium funds" in a fiduciary account and "remit to Torus US all premiums" Hybrid received, less certain commissions to which Hybrid was entitled.[2] (Dkt. No. 1 ¶¶ 14-17; Dkt. No. 1-3 §§ IV, III.B) The agreement also provided that in

---

[1] For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a), the citizenship of an LLC depends on that of its members. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419-20 (3d Cir. 2010). The complaint generally pleads that diversity jurisdiction is present. It does not, in so many words, allege the citizenship of each of the members of the LLC. The United States Court of Appeals for the Third Circuit recently held that a complaint need not specifically allege the citizenship of the members of a defendant LLC if, after reasonable investigation, the plaintiff is unable to do so. *Lincoln Ben. Life Co. v. AEI Life, LLC*, No. 14-2660, 2015 WL 5131423, at *6 (3d Cir. Sept. 2, 2015).

[2] Section III.B of the Broker Agreement states:

> Broker guarantees the full payment due Torus Specialty or Torus National (whichever applies) of all premiums, including any and all deposit, earned, extension and adjustable premiums, fees, surcharges, assessments plus any applicable taxes, less commission, on every insurance contract bound or written for Broker pursuant to this Agreement, whether or not collected by Broker.

2

the event of an enforcement proceeding to collect amounts due under the agreement, Hybrid would pay "all costs incident thereto, including reasonable attorney's fees." (Dkt. No. 1-3 § III.B) Under the agreement, Hybrid was required to remain licensed in Connecticut, and the agreement provided for automatic termination "if any public authority cancels or declines to renew Broker's license or certificate of authority." (Dkt. No. 1 ¶ 19; Dkt. No. 1-3 §§ II.A, X.1) The Broker Agreement also provided that it would be governed by the laws of New York. (Dkt. No. 1-3 § XIV.D)[3]

Around the same time, Torus US entered into a second agreement (the "Portal Agreement") with Hybrid, again as servicing agent for Torus Specialty and Torus National. (Dkt. No. 1 ¶ 24) Again, the agreement stated that it was between Torus US and Hybrid, and O'Garro signed on behalf of Hybrid. (Dkt. No. 1 pp. 1, 6) The agreement authorized Hybrid to utilize an online insurance portal "to quote, rate, bind, submit, invoice, and issue insurance policies through Torus Specialty and Torus National." (Dkt. No. 11 p. 4; Dkt. No. 1-2 § I) Under the agreement, Hybrid agreed that the information it provided plaintiffs through the portal would be accurate and that it would not engage in behavior that would "violate any applicable law or regulation." (Dkt. No. 1 ¶¶ 27-28; Dkt. No. 1-2 § VI.A) The Portal Agreement incorporated the terms and conditions of the Broker Agreement "except as expressly modified" by the Portal

---

[3] The Broker Agreement contained an alternative dispute resolution provision stating that "all disputes, controversies and claims of any kind and nature between the parties arising out of or in any way related to this Agreement … shall be resolved exclusively by" negotiation, mediation, or arbitration. (Dkt. No. 1-3 § XII) The Broker Agreement is governed by New York law, and the Court of Appeals for the Second Circuit has held that a party waives its right to arbitration by defaulting. *See Baker & Taylor, Inc. v. AlphaCraze.Com Corp.*, 602 F.3d 486, 492 (2d Cir. 2010)(defendant that "has not appeared or sought to defend itself in any way, never moved to compel arbitration, but instead defaulted … has waived its right to arbitrate"). Although the Court of Appeals for the Third Circuit has not addressed this specific issue, district court authority within this Circuit is in accord. *See Eastern Constr. & Elec., Inc. v. Universe Technologies, Inc.*, No. 10-1238, 2011 WL 53185, at *7 & n.5 (D.N.J. Jan. 6, 2011) (entering default judgment despite an arbitration provision because defendant failed to assert the right to arbitrate) (citing *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 214 (3d Cir. 2010)(defendant waived the right to arbitrate because he failed to assert it in a timely manner and instead engaged in litigation behavior)).

3

Agreement.[4] (Dkt. No. 1 ¶ 25; Dkt. No. 1-2 p. 1) The agreement also obligated Hybrid to indemnify the plaintiffs for claims arising from its use of the portal, "including reasonable attorney's fees." (Dkt. No. 1 ¶ 29; Dkt. No. 1-2 § VI.I) The Portal Agreement provided that it would automatically terminate in the event that the Broker Agreement was terminated. (Dkt. No. 1 ¶ 20; Dkt. No. 1-2 p. 1) This agreement provided that it would be governed by the laws of New Jersey. (Dkt. No. 1-2 § VI.K)

On November 14, 2013, the Connecticut Insurance Department revoked Hybrid's insurance licenses, which automatically terminated the Broker agreement, and in turn the Portal Agreement. (Dkt. No. 1 ¶¶ 21-23, 31; Dkt. No. 1-4) By letter dated November 25, 2013, the plaintiffs notified Hybrid of the termination of the agreements. (Dkt. No. 1 ¶ 23; Dkt. No. 1-5)

The plaintiffs allege that since January 2012, the defendants have received and retained $265,836 in premiums for insurance policies issued by Torus Specialty and Torus National. (Dkt. No. 1 ¶ 32) The "Defendants also have failed to provide an accounting sufficient for Plaintiffs to identify and confirm which of the insureds have paid insurance premiums to Defendants."[5] (Dkt. No. 1 ¶ 35) The plaintiffs request that the Court enter default judgment as to liability and order an inquest to assess the amount of damages to which they are entitled. (Dkt. No. 11 pp. 10-11)

## II. DISCUSSION

### A. Legal Standard and Prerequisites for Default Judgment

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing

---

[4] The Portal Agreement refers to the "Producer Agreement or Excess and Surplus Lines Agreement." As the plaintiffs' brief explains, this is intended to refer to the Broker Agreement. (*See* Dkt. No. 11 p. 4 n.4.)

[5] Under the terms of the Broker Agreement, the plaintiffs are entitled to premiums for "every insurance contract bound or written for Broker pursuant to this Agreement, whether or not collected by Broker." (Dkt. No. 1-3 Section III.B)

4

*Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults or default judgments." *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher,* No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone,* No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky,* 558 F.Supp.2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Id.*

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is ordinarily twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.,* 756 F.2d 14, 18–19 (3d Cir. 1985); FED. R. CIV. P. 12(a).

The complaint, alleging negligence, breach of contract, and conversion arising from violations of the Broker Agreement and Portal Agreement, was filed on March 13, 2014, and the clerk issued a summons. (Dkt. No. 1). The plaintiffs have filed proofs of proper service of the summons and complaint

upon Hybrid and O'Garro on May 20, 2014.[6] (Dkt. Nos. 4, 5) Under FED. R. CIV. P. 12(a)(1), the defendants had twenty-one days to respond to the complaint. Defendants' time to respond expired, and they did not answer or otherwise respond to the complaint. At the plaintiffs' request, the Clerk of Court entered default against the defendants on September 23, 2014. On December 23, 2014, the plaintiffs filed this motion for default judgment. (Dkt. No. 11) Again, there has been no response.

Accordingly, I am satisfied that the prerequisites to a motion for default judgment are met. *See Gold Kist,* 756 F.2d at 18–19.

### B. Analysis

In deciding whether to enter a default judgment, a court must consider the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds,* 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment against Hybrid as to the breach of contract claim (Count II). I do not see any sufficient basis for entering judgment against O'Garro, who was not personally a contracting party. I find that the plaintiffs' tort claims, negligence and conversion (Counts I and III), would be barred by the "economic loss doctrine." I therefore decline to enter a default judgment as to either defendant on those counts.

---

[6] O'Garro was served personally and as President and CEO of Hybrid. Service of a corporate entity, partnership or "other unincorporated association that is subject to suit under a common name" may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." FED. R. CIV. P. 4(h)(1).

### 1. Breach of Contract (Count II)

I first consider breach of contract, the claim most clearly applicable to the facts. As to the first factor—whether the defendants have a meritorious defense to plaintiffs' claims—I am disadvantaged of course by the lack of any submission by the defendants. However, based on my independent review of the record before me, I see no suggestion that the plaintiffs' breach of contract claim is legally flawed as to Hybrid, the other party to the contracts at issue. *See Doe*, 2013 WL 3772532, at *5. Accepting the factual allegations as true, I find that the plaintiffs have properly pled a cause of action for breach of contract against Hybrid under both New Jersey and New York law.[7] (Section B.1.a) I address the question of O'Garro's liability separately. (Section B.1.b)

### a. Liability of Hybrid for Breach of Contract

To establish a breach of contract claim under New Jersey law, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (internal citation omitted). New York law is similar. *See Swan Media Group, Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012)("[T]he elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.") (citations omitted).

I am satisfied that the plaintiffs have set forth a legally sufficient claim of breach of contract against Hybrid. I cannot, from the materials before me, discern any meritorious defense. The plaintiffs have alleged specific facts showing that Torus US and Hybrid entered into two valid, enforceable

---

[7] The Broker Agreement is governed by New York law, and the Portal Agreement by New Jersey law. (Dkt. No. 1-3 § XIV.D; Dkt. No. 1-2 § VI.K) However, the alleged causes of action are substantively identical under the laws of both states.

7

contracts: the Broker Agreement and the Portal Agreement. They plausibly allege that Hybrid breached its explicit contractual obligations by failing to hold funds in a fiduciary capacity and to remit the insurance premiums in accordance with the agreements. (Dkt. No. 1 ¶¶ 34-36) The plaintiffs allege that they "fully performed" their own contractual duties, and I have no facts before me to the contrary. (Dkt. No. 1 ¶ 50) The plaintiffs allege that they were financially damaged as a result of Hybrid's breach and that they are entitled to receive an estimated $265,836, plus interest, for insurance premiums that Hybrid collected but did not pass along to Torus US (Dkt. No. 1 ¶¶ 52-54) That theory of damages is straightforward and uncontroversial. The plaintiffs also claim costs and reasonable attorneys' fees under the contracts, which both provide for such awards. (Dkt. No. 1 ¶ 54)

    The second and third factors also weigh in favor of default judgment as to Hybrid. Hybrid was properly served on May 20, 2014, well over a year ago, but has failed to appear and defend itself in any manner. It is clear that the plaintiffs have been prejudiced by this dereliction because it has "prevented [plaintiffs] from prosecuting [their] case, engaging in discovery, and seeking relief in the normal fashion." *Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011). Absent evidence to the contrary, a properly served defendant's failure to answer is sufficient to establish its culpability for the default. *Id.* In this case, there is nothing before the Court to show that Hybrid's "failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, No. 08-2108, 2009 WL 536403 at *1 (D.N.J. February 27, 2009)(finding that when there is nothing before the court to suggest anything other than that the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment)).

    The only possible conclusion based on the record before me is that Hybrid is liable for breach of contract. Accordingly, I find that the entry of a default judgment against Hybrid as to Count II is appropriate.

8

### b. Liability of O'Garro for Breach of Contract

As to O'Garro's liability in his personal capacity, the picture is different.[8] The plaintiffs have failed to allege a plausible claim of breach of contract against O'Garro himself. Both the Broker Agreement and Portal Agreement state clearly that the contracting parties are Torus US (as servicing agent for Torus Specialty and Torus National) and Hybrid. True, O'Garro signed the contracts, but he did so on Hybrid's behalf as its President and CEO. That, without more, does not render him personally liable under the contract. *See Irwin Katz & Assoc., Inc., v. Concepts in Health*, Inc., No. 13-1217, 2014 WL 6471486, at *14 (D.N.J. Nov. 19, 2014)("[T]he mere fact that an individual executed a contract for the purpose of binding a corporation does not also render that individual liable.") (internal quotations and citation omitted); *cf.* N.J.S.A. 42:2C-30 (stating that the debts of an LLC are solely the obligation of the LLC and not of any members, managers or employees); *Rivera v. Lincoln Park Care Center, LLC*, No. 12-7432, 2014 WL 29029, at *6 (D.N.J. Jan. 2, 2014)("The primary purpose of forming a corporation, such as a limited liability company ('LLC'), is to insulate its members from the liabilities that accompany a business enterprise.") (citations omitted). To the contrary, O'Garro is shielded from liability unless the plaintiffs allege facts sufficient to pierce the corporate veil of Hybrid—which requires a significant showing. *See Irwin Katz & Assoc.*, 2014 WL 6471489 at *14; *Rivera*, 2014 WL 29029, at *6 ("Courts are generally unwilling to pierce the corporate veil ... unless the corporation is being used to defeat the ends of justice....") (citation omitted).[9] The plaintiffs, far from making

---

[8]     It is unclear whether the plaintiffs truly intend to assert claims against O'Garro. Neither in the complaint nor in this motion do they assert any basis for his personal liability. They merely name him as a defendant and assert their positions against "defendants" (plural) throughout their complaint and brief. I therefore address the issue, but only briefly.

[9]     Under New Jersey law, which governs the Portal Agreement, a court has two options when determining the law to apply regarding piercing the veil of an LLC. First, the New Jersey Limited Liability Company Act instructs application of the law of the state under which the LLC was formed. *See* N.J.S.A. 42:2C-57(a)(2). Here, that is

9

such a showing, have not even made any pertinent allegations. A default judgment against O'Garro, a non-contracting party, for breach of contract is therefore inappropriate.

### 2. Tort Claims (Counts I and III)

The plaintiffs also allege two causes of action based in tort: negligence (Count I) and conversion (Count III). Because these tort claims flow directly from the breach of contract, they are barred by the economic loss doctrine.

To establish a claim of negligence under New Jersey law, a plaintiff must allege "a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate cause; and (4) actual damages." *In re Paulsboro*, No. 12-7648, 2013 WL 5530047, at *2 (D.N.J. October 4, 2013) (citation omitted). New York law is similar. *See Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) (plaintiff must allege "(1) the existence of a duty on the defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof") (citation omitted).

---

Connecticut. Second, courts have applied the law of "the state that has the most significant connections with the parties and the transaction." *Mark IV Transp. & Logistics, Inc. v. Lighting Logistics, LLC*, No. 09-6480, 2014 WL 70703088, at *3 (D.N.J. Dec. 15, 2014) (citations omitted). Here, the obvious candidates are Connecticut, where Hybrid was formed and based, and New Jersey, where the plaintiffs maintain their primary place of business and chose to bring suit. I need not decide which state's law applies because they are substantively the same, and under either, the plaintiffs have not established what is required to pierce the corporate veil. *See North American Steel Connection, Inc. v. Watson Metal Products Corp.*, 515 Fed. App'x 176, 179 (3d Cir. 2013)(to pierce the veil in New Jersey a plaintiff must demonstrate (1) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and (2) that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice") (internal quotations and citations omitted); *In re Carrano*, 50 B.R. 540, 555-556 (D. Conn. 2015)(in Connecticut, "[c]ircumstances under which the corporate veil may be pierced occur when the corporation is controlled and dominated in a manner that requires liability to be imposed on the real actor.") (citation omitted). Under New York law, which governs the Broker Agreement, again the law of Connecticut would apply. *See Xiotech Corp. v. Express Data Products Corp.*, 11 F.Supp.3d 225, at 235-236 n.5 (N.D.N.Y. 2014)(the law of the state of incorporation governs the decision to pierce the corporate veil) (citation omitted).

To establish a claim of conversion under the law of New Jersey, a plaintiff must allege "the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." *D & D Technology, Inc. v. CytoCore, Inc.*, No. 14-4217, 2014 WL 4367314, at *4 (D.N.J. 2014). Again, New York law is similar. *See Pacific M. Intern. Corp. v. Raman Intern. Gems, Ltd.*, 888 F.Supp.2d 385, 396 (S.D.N.Y. 2012)("[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.") (citations omitted).

While on first glance the plaintiffs seem to have set forth the essential elements of these torts, their allegations are in reality just the breach-of-contract allegations repackaged. Under the economic loss doctrine (applicable in both New Jersey and New York), "parties to a contract are not entitled to supplemental protection by negligence principles." *D & D Technology*, 2014 WL 4367314, at *3-4 (citations omitted). Where a plaintiff recasts a claim of breach of contract in tort, the tort claim will not stand. *See Hanover Architecture Service P.A. v. Christian Testimony-Morris, N.P.*, No. 10-5455, 2014 WL 884778, at *7 (D.N.J. March 6, 2014)(the economic loss doctrine "preclud[es] a party's negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care" external to the contract) (internal quotations and citations omitted); *DiAntonio v. Vanguard Funding, LLC*, No. 14-4526, 2015 WL 3629539, at *7 (D.N.J. June 10, 2015)("[T]o the extent the negligence claim is based upon Defendants' failure to comply with contractual obligations, the claim is subject to dismissal"); *D & D Technology*, 2014 WL 4367314, at *3-4 ("New Jersey courts have expressly restricted application of the doctrine of conversion when it seeks to turn a claim based on breach of contract into a tort claim."); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F.Supp.2d 393, 416 (S.D.N.Y.)(under New York law, "[a] conversion claim must be dismissed when it does not stem from a wrong independent of the alleged breach of contract.") (citation omitted).

To support an independent tort claim, then, the complaint's allegations

11

must arise from a wrong independent of the alleged breach of contract. The allegations of this complaint do not. The plaintiffs rely solely on their contracts with Hybrid. With respect to their negligence claim, they allege that the defendants violated their duty to hold the collected insurance premiums in a "fiduciary capacity," which arises only from the Broker Agreement (and by incorporation, the Portal Agreement). (Dkt. No. 1 ¶ 42; *see* Dkt. No. 1-3 § IV) As to the plaintiffs' conversion claim, the property they allege was wrongfully withheld consists of the payments they were entitled to receive under the agreements. (*See* Dkt. No. 1 ¶ 61; Dkt. No. 1-3 Section III.B.) These allegations boil down to a claim of breach of contract, as to which I have entered default judgment against Hybrid. I decline to enter a default judgment on the tort claims as to either defendant.

### C. Remedy

The plaintiffs assert that they are owed an estimated $265,836 in insurance premiums, as well as interest, costs, and attorneys' fees. In support of their estimate of actual damages, they attach to the affidavit of Jason Simmons, Head of Compliance for Torus US, a chart listing the premiums plaintiffs believe Hybrid was paid and failed to remit. (Dkt. No. 11-2 Exhibit E) The plaintiffs do not submit any underlying documentation regarding their calculation of outstanding premiums or any documents regarding other sources of damages (e.g., interest, costs, attorneys' fees). Instead, the plaintiffs request an inquest on damages pursuant to FED. R. CIV. P. 55(b)(2).

To order an inquest now—where only one page of material regarding damages is before the Court—would be premature. If the plaintiffs have any additional proofs the Court should consider regarding damages, including documentation relating to (1) the basis for the estimated amount of outstanding insurance premiums, (2) calculation of interest on those premiums, and (3) attorneys' fees and costs, they should file it with the Court in the form of an affidavit or certification. Upon reviewing any such materials, I

will enter either enter final judgment or revisit the request for an inquest.

### III. CONCLUSION

For the foregoing reasons, I will enter a separate order granting the plaintiffs' motion for a default judgment against Hybrid on Count II of the complaint. The motion is otherwise denied. The plaintiffs are ordered to file with the Court any proof documenting actual or estimated damages, as well as costs and fees.

_____
**KEVIN MCNULTY**
**United States District Judge**

Dated: October 22, 2015